IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 26-cv-02410-PAB

EDGAR URIEL MARTINEZ-SALAMANCA,

      Petitioner,

v.

JUAN BALTAZAR, Warden, Aurora ICE Processing Center, in his official capacity,
DAVID VENTURELLA, Acting Director of U.S. Immigration and Customs enforcement, in his official capacity,
MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security, in his official capacity, and
TODD BLANCHE, Acting Attorney General of the United States, in his official capacity,

      Respondents.

---

**ORDER**

---

This matter comes before the Court on petitioner Edgar Uriel Martinez-Salamanca's Verified Petition for Habeas Corpus [Docket No. 1] and Petitioner's Motion for Temporary Restraining Order and/or Preliminary Injunction [Docket No. 2]. Respondents filed a response.  Docket No. 9.

## I.  BACKGROUND[1]

Petitioner is a 22-year-old citizen of Mexico who entered the United States without inspection on or about September 1, 2022.  Docket No. 1 at 8-9, ¶ 32.  On March 10, 2025, petitioner filed an application for Special Immigrant Juvenile ("SIJ") status.  *Id.* at 9, ¶ 34.  SIJ status grants recipients many important benefits, including the ability "to apply for adjudgment of status to that of lawful permanent residents while

---

[1] The following facts are undisputed unless otherwise noted.

within the United States." *Osorio-Martinez v. Att'y Gen. United States of Am.*, 893 F.3d 153, 160 (3d Cir. 2018). Petitioner's application for SIJ status was approved by the Department of Homeland Security ("DHS") on July 28, 2025. Docket No. 1 at 9, ¶ 34. However, because there is a backlog in visa availability, petitioner is not yet eligible to apply for adjustment of status. *Id.*

On January 13, 2026, Immigration and Customs Enforcement ("ICE") officers arrested petitioner and his boss during a worksite enforcement raid at petitioner's workplace. *Id.*, ¶ 35. The same day that petitioner was arrested, January 13, 2026, DHS initiated removal proceedings against petitioner, issuing a Notice to Appear which alleged that petitioner is removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). *Id.*, ¶ 33. On March 23, 2026, an immigration judge issued an order requiring DHS to request expedited consideration for deferred action on petitioner's case based on his SIJ status.[2] *Id.*, ¶ 37. There is no indication that DHS has done so. *Id.* On April 7, 2026, petitioner filed an application for asylum and withholding of removal. *Id.*, ¶ 38. Petitioner asserts that his detention is governed by 8 U.S.C. § 1226(a). *Id.* at 17, ¶ 70.

On June 1, 2026, petitioner filed an application for writ of habeas corpus. *See generally id.* Petitioner brings claims for violations of his substantive and procedural due process rights under the Fifth Amendment, for violation of his Fourth Amendment rights, and for violation of the Immigration and Nationality Act ("INA"). *Id.* at 10-18, ¶¶ 40-73. On June 9, 2026, respondents filed a response, which only indicated their belief that petitioner is detained pursuant to 8 U.S.C. § 1225(b). Docket No. 9. On June

---

[2] If granted, deferred action "temporarily defers Petitioner's removal from the United States." *Alfaro Herrera v. Baltazar*, No. 25-cv-04014-CNS, 2026 WL 91470, at *4 (D. Colo. Jan. 13, 2026).

10, 2026, the Court issued a minute order noting that petitioner's habeas petition states that he was arrested without a warrant, but that a warrant is seemingly attached to the habeas petition as an exhibit.  Docket No. 10.  The Court ordered supplemental briefing addressing this issue.[3]  *Id.*  On July 15, 2026, respondents filed a notice of supplemental authority, indicating that the Tenth Circuit issued an opinion limiting the scope of 8 U.S.C. § 1225(b) to noncitizens detained at the border.  Docket No. 16.  On July 16, 2026, petitioner filed a motion to expedite consideration, wherein he informed the Court that DHS held a bond hearing where bond was denied in a two-word order stating "Flight risk."  Docket No. 17; *see also* Docket No. 17-1 at 1.

## II.  ANALYSIS

In *Santillan Quiroz v. Mullin*, --- F.4th ----, 2026 WL 1876709, at *16 (10th Cir. June 30, 2026), the Tenth Circuit held that 8 U.S.C. § 1226(a) governs the detention of noncitizens undergoing removal proceedings who are detained in the interior of the United States.  Petitioner is undergoing removal proceedings and was detained in the interior of the United States.  Thus, his detention is governed by § 1226(a).

Section 1226(a) provides that, "*[o]n a warrant issued by the Attorney General*, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."[4]  8 U.S.C. § 1226(a) (emphasis added).  Petitioner alleges that he was arrested without a warrant, and that he is therefore entitled to

---

[3] The Court also ordered supplemental briefing on petitioner's due process claims, but the Court will not resolve this case on due process grounds.  Docket No. 14.
[4] The type of warrant issued by immigration officers is known as Form I-200. *Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1216 (D. Colo. 2025) (citing 8 C.F.R. §§ 236.1, 1236.1).

release.[5]  Docket No. 1 at 16, ¶ 66.  While respondents do not address this allegation in their response, *see generally* Docket No. 9, respondents refute this allegation in their supplemental briefing.  Docket No. 13 at 2-3.  Respondents also assert that "[t]he warrantless arrest claim is beyond this court's jurisdiction."  *Id.* at 1.  The Court will first address the jurisdictional argument.

Respondents argue that 8 U.S.C. § 1252(b)(9) deprives the Court of jurisdiction to hear this claim.  *Id.*  Section 1252(b)(9) states that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section."  8 U.S.C. § 1252(b)(9).  A petition for review must be filed in the Court of Appeals.  8 U.S.C. § 1252(a)(5).  However, the Tenth Circuit has held that Congress did not intend § 1252(b)(9) "to cut off claims that have a tangential relationship with pending removal proceedings."  *Mukantagara v. U.S. Dep't of Homeland Sec.*, 67 F.4th 1113, 1116 (10th Cir. 2023) (citation omitted).  Thus, "'§ 1252(b)(9) does not present a jurisdictional bar' to judicial review of 'the decision to detain' an alien pending removal proceedings" because such a claim does not challenge the removal proceedings themselves.[6]  *Cisneros v. Noem*, 820 F. Supp. 3d

---

[5] Petitioner argues that his warrantless arrested "violated the Fourth Amendment, the INA, and implementing regulations."  Docket No. 1 at 16, ¶ 66.  The Court will resolve this claim on the statutory basis and will not reach the issue of whether petitioner's arrest violated the Fourth Amendment.  *See King v. Smith*, 392 U.S. 309, 334 (1968) ("It is, of course, traditional that our disposition of cases should, if possible, be on statutory rather than constitutional grounds.") (Douglas, J, concurring).

[6] Respondents cite *Min-Shey Hung v. United States*, 617 F.2d 201, 202 (10th Cir. 1980), for the proposition that petitioner must seek review of an unlawful arrest after a deportation order is received.  Docket No. 13 at 2.  However, the *Min-Shey Hung* court made this statement in the context of discussing whether the allegedly unlawful arrest invalidated deportation proceedings, not whether it invalidated petitioner's detention.

4

1265, 1270 n.1 (D. Utah 2026) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294-95 (2018)); *see also Hasan v. Crawford*, 800 F. Supp. 3d 641, 650 n.7 (E.D. Va. 2025) ("Federal courts throughout the country have similarly found that these jurisdiction-stripping provisions do not deprive the federal courts of jurisdiction to review a noncitizen's challenge to the legality of his detention.") (collecting cases).  Accordingly, because petitioner is challenging his detention rather than his removal proceedings, the Court has jurisdiction to review the warrantless arrest claim.

Petitioner attaches both a Notice to Appear and a Form I-200 Warrant for Arrest to his habeas petition.  *See generally* Docket No. 1-1.  These documents are dated January 13, 2026, the date of petitioner's arrest, but state that they were uploaded[7] on January 23, 2026.  *Id.*  The Notice to Appear states that it was served via detainee mail. *Id.* at 2.  In his supplemental briefing, petitioner states that the Notice to Appear and Form I-200 were drafted after his arrest and that he was served with the documents after being detained, as evidenced by the fact the Notice to Appear states it was served via detainee mail.  Docket No. 11 at 1-2.  Petitioner also notes that he has no prior immigration history with ICE, thus framing his arrest as a "collateral arrest" made as part of the worksite raid on his workplace rather than an enforcement effort targeted at petitioner.  Docket No. 11 at 4.

---

*Min-Shey Hung*, 617 F.2d at 202-03.  Conversely, when discussing the validity of the petitioner's detention, the *Min-Shey Hung* court held that the lack of a warrant did not invalidate petitioner's detention because respondents followed the procedure in 8 U.S.C. § 1357(a)(2), which allows for arrest without a warrant in certain cases.  *Id.* at 202; *see also* 8 U.S.C. § 1357(a)(2).  Respondents do not claim that section § 1357(a)(2) is applicable here.  *See generally* Docket No. 13.

[7] Petitioner asserts that this means the documents were "filed with the Executive Office of Immigration Review (EOIR) on January 23, 2026," which respondents do not dispute.  Docket No. 11 at 2.

Respondents, on the other hand, indicate that petitioner was arrested pursuant to a warrant.  Docket No. 13 at 3.  Through the declaration of a deportation officer, respondents state the following:

> On January 13, 2026, ICE officers encountered Petitioner in Parker, Colorado.  Upon a review of Petitioner's immigration history, ICE determined that Petitioner did not lawfully enter the United States and did not possess valid immigration documentation authorizing his presence in the United States.  ICE further determined that Petitioner is subject to removal from the United States.  Petitioner was arrested pursuant to a warrant issued by an acting Supervisory Detention and Deportation Officer at the time of his arrest.

Docket No. 13-1 at 3, ¶ 6.  Thus, respondents argue that petitioner was lawfully arrested through a warrant issued at the time of his arrest.[8]  Docket No. 13 at 2-3.  However, the court in *Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1226 (D. Colo. 2025) "rejected the notion that an I-200 warrant issued either *after* or *concurrent* with an arrest without an assessment of individual flight risk transforms an unlawful warrantless arrest into a lawful, warranted one."  (citations omitted).

Moreover, respondents do not refute petitioner's claim that the Notice to Appear was issued after petitioner's arrest.  *See generally* Docket No. 13.  Respondents state that DHS issued the Notice to Appear the same day as petitioner's arrest, but do not assert the time that it was issued or that it was issued concurrent with or before the issuance of the Form I-200.  Docket No. 13-1 at 3-4, ¶ 10.  Federal regulations state that a Form I-200 arrest warrant cannot be issued until the time that a Notice to Appear

---

[8] Notably, at least one court has found that respondents failed to show an arrest warrant preceded a petitioner's arrest when it was dated the same date of the petitioner's arrest but was served at an ICE detention center shortly after the petitioner was detained.  *Juan J.M.E. v. Easterwood*, 2026 WL 1746672, at *3 (D. Minn. June 8, 2026), *report and recommendation adopted sub nom. Juan M.E. v. Easterwood*, 2026 WL 1747756 (D. Minn. June 17, 2026).  This mirrors the facts of the instant case.

is issued or any time thereafter. *Ramirez Ovando*, 810 F. Supp. 3d at 1216 (citing 8 C.F.R. §§ 236.1, 1236.1). Thus, given petitioner's unrefuted claim that the Notice to Appear was not issued until after petitioner's arrest, the Court finds that the Form I-200 warrant was invalid. Therefore, petitioner was not arrested pursuant to a valid warrant, in contravention of 8 U.S.C. § 1226(a).

There are exceptions to § 1226(a)'s warrant requirement. Pursuant to § 1357(a)(2), immigration officials may arrest a noncitizen without a warrant:

> to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States.

8 U.S.C. § 1357(a)(2). Under § 1357(a)(5), an immigration officer may also make a warrantless arrest:

> (A) for any offense against the United States, if the offense is committed in the officer's or employee's presence, or
>
> (B) for any felony cognizable under the laws of the United States, if the officer or employee has reasonable grounds to believe that the person to be arrested has committed or is committing such a felony,
>
> if the officer or employee is performing duties relating to the enforcement of the immigration laws at the time of the arrest and if there is a likelihood of the person escaping before a warrant can be obtained for his arrest.

8 U.S.C. § 1357(a)(5). "Courts have recognized that these warrantless-arrest authorities are strictly limited, particularly in the interior-arrest context." *Morelos Valdovinos v. Noem*, 2026 WL 948285, at *5 (D.N.M. Apr. 8, 2026) (collecting cases).

Respondents have not provided any argument or set forth any evidence indicating that petitioner's warrantless arrest was proper under § 1357. *See generally* Docket No. 13. In fact, such a warrantless arrest could not be proper in this case. Respondents state that petitioner was arrested solely due to his unlawful status. Docket No. 13-1 at 3, ¶ 6. But a "lack of lawful status" is insufficient to justify a warrantless arrest under § 1357. *Ramirez Ovando*, 810 F. Supp. 3d at 1231. Accordingly, the Court finds that respondents lacked statutory authority to arrest petitioner and that petitioner's detention is thus unlawful. *See Morelos Valdovinos*, 2026 WL 948285, at *6 (finding that respondents lacked authority for petitioner's arrest where "[n]othing in the record suggests that either statutory condition – reasonable belief of a violation or likelihood of escape – was met" and "the record contains no facts that would satisfy § 1357(a)(2) or (a)(5)'s narrow prerequisites for a warrantless arrest"); *Matovu v. Mullin*, 2026 WL 1387476, at *3 (W.D. Okla. May 18, 2026) (finding that respondents' warrantless arrest was unlawful where "Respondents introduced no evidence and, as such, failed to establish that they had reason to believe Petitioner was likely to escape before a warrant could be obtained for his arrest") (alteration, internal quotation, and citation omitted).

Where respondents have failed to obtain a warrant for a noncitizen detained under § 1226(a) and lacked statutory authority for a warrantless arrest, courts have found the appropriate remedy is to order the non-citizen's release. *See, e.g.*, *Vo. v. Baltazar*, 26-cv-02626-NYW, 2026 WL 1998578, at *4 (D. Colo. July 10, 2026) ("the Court respectfully disagrees that a bond hearing is an appropriate remedy when a petitioner is detained without the warrant required by § 1226(a)"); *Morelos Valdovinos*,

8

2026 WL 948285, at *7 (ordering petitioner's released based on "a growing body of decisions holding that when DHS detains a noncitizen under § 1226(a) without a warrant and without satisfying § 1357(a)(2), the detention is unlawful from the outset and immediate release is required") (collecting cases); *Matovu*, 2026 WL 1387476, at *3; *Kunner v. Grant,* 2026 WL 1623016, at *4 (W.D. Okla. Apr. 22, 2026), *report and recommendation adopted sub nom.*, 2026 WL 1452463 (W.D. Okla. May 22, 2026). "[W]hen DHS cannot meet the statute's requirements for a warrantless arrest, continued detention is unlawful and release is the only permissible remedy*." Morelos Valdovinos* 2026 WL 948285, at *7.  Accordingly, the Court will order petitioner's release.[9]

## III.  CONCLUSION

Therefore, it is

**ORDERED** that petitioner Edgar Uriel Martinez-Salamanca's Verified Petition for Habeas Corpus [Docket No. 1] is **GRANTED**.  It is further

**ORDERED** that Petitioner's Motion for Temporary Restraining Order and/or Preliminary Injunction [Docket No. 2] is **DENIED as moot**.  It is further

**ORDERED** that Petitioner's Motion to Expedite Consideration of Petition for Writ of Habeas Corpus [Docket No. 17] is **DENIED as moot**.  It is further

**ORDERED** that respondents shall release petitioner from custody within **48 hours** of the issuance of this order.  It is further

---

[9] Because the Court will order petitioner's release on the basis of the warrantless arrest, it will not reach petitioner's other claims for relief.

**ORDERED** that the parties shall file a status report confirming that petitioner has been released from custody within **four days** of the issuance of this order.

DATED July 20, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge